■ HARRY ROSENFELD, as Administrator of the Estate of DAVID ROSENFELD, Deceased, Appellant, v IRVING ISAACS et al., Respondents.— In an action to recover damages for wrongful death and conscious pain and suffering, plaintiff appeals from an order of the Supreme Court, Nassau County, dated May 4, 1979, which granted defendants' motion for partial summary judgment dismissing the cause of action for punitive damages. Order affirmed, with $50 costs and disbursements. In this action to recover damages for wrongful death and conscious pain and suffering, plaintiff argues that punitive damages should be recoverable because of the allegedly egregious manner in which the deceased met his death. The statutes that give rise to the measure of damages in causes of action for wrongful death and conscious pain and suffering (EPTL 5-4.3 and 11-3.2) either explicitly or implicitly bar the recovery of punitive damages in such actions (see *Robert v Ford Motor Co.,* 73 AD2d 1025; *Hempel v American Airlines,* 102 Misc 2d 563). There is no sound basis for the adoption of a judicial initiative which would allow for the recovery of punitive damages in such actions. Plaintiff sets forth the initially appealing argument that the bar to the recovery of punitive damages in these actions constitutes a denial of equal protection under both the Federal and State Constitutions. He argues that in light of the avowed goal, where the recovery of punitive damages is permitted, of deterrence of future misconduct, there is no logic in allowing a tort-feasor whose conduct has been so severe as to result in the death of an innocent individual to escape from the remedy of punitive damages while allowing for the recovery of such damages where the injuries involved do not result in death. If punitive damages are going to prove efficacious, they must, if anything, be available to condemn and punish the conduct of the tort-feasor who causes death. In analyzing plaintiff's challenge to the constitutionality of EPTL 5-4.3 and 11-3.2, we must be ever conscious of the severely restricted scope of review available to us. Thus, while "The exceedingly strong presumption of constitutionality * * * is rebuttable, unconstitutionality must be demonstrated beyond a reasonable doubt and only as a last resort should courts strike down legislation on the ground of unconstitutionality." *(Lighthouse Shores v Town of Islip,* 41 NY2d 7, 11.) The constitutionality of the challenged legislative judgments will be upheld "if on any interpretation of the facts known or reasonably to be perceived" acceptable justification can be found *(Town of Huntington v Park Shore Country Day Camp of Dix Hills,* 47 NY2d 61, 66). As the classification at issue does not involve invidious, discrimination or fundamental rights, all we need find is "that the classification challenged be rationally related to a legitimate state interest" *(New Orleans v Dukes,* 427 US 297, 303). Actions to recover damages for wrongful death and conscious pain and suffering did not exist at common law, and came into being solely as the result of legislative enactments (see *Ratka v St. Francis Hosp.,* 44 NY2d 604; *Liff v Schildkrout,* 49 NY2d 622). In terminating the harsh results that existed at common law whereby a cause of action was lost when the injured party died, the Legislature, in its wisdom, chose to bar the recovery of punitive damages. Some indication of the legislative intent in this

regard may be gleaned from the following language of the 1935 Law Revision Commission's recommendation in discussing the adoption of the predecessor statute to EPTL 11-3.2: "However, the desirability of using the civil action as a punitive device is questionable in any case; certainly the practice should not be extended without convincing reasons. The purpose of permitting a cause of action for personal injury to survive the death of the injured person is not to punish the wrongdoer, but to preserve for the injured person's estate his right to damages for harm actually suffered. Therefore, it is believed that in such case only compensatory damages should be allowed." (1935 Law Revision Commission Report, pp 163, 164.) What emerges from this are two distinct bases for finding rationality in the bar to the recovery of punitive damages in death actions. Reckless and criminally negligent conduct (see Penal Law, § 15.05) can give rise to criminal prosecutions for criminally negligent homicide (Penal Law, § 125.10), manslaughter in the second degree (Penal Law, § 125.15), and even murder in the second degree (Penal Law, § 125.25, subd 2). It is within the province of the Legislature, and not the courts, to determine whether the deterrent value of allowing the recovery of punitive damages in civil actions enhances the penal statutes as to the available consequences for wrongful conduct that results in death to such a degree as to require the enactment of such legislation. Although the role of the civil action which seeks punitive damages may have risen in status and appeal in recent years, we cannot characterize a legislative conclusion that available potential homicide prosecutions provide sufficient deterrent value as completely irrational. In enacting the wrongful death and conscious pain and suffering statutes, the Legislature sought to abolish the severe consequences that resulted at common law when an injured party died. In preserving for the injured person's estate the right to recover for harm actually suffered, and in permitting the family of the deceased to recover pecuniary losses, the Legislature focused on monetary recovery for those who suffered from the tort-feasor's conduct, and not on the punishment of the miscreant. This was perfectly permissible. "States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step, *Katzenbach v. Morgan,* 384 U. S. 641 (1966), in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. See, e.g., *Williamson v. Lee Optical Co.,* 348 U. S. 483, 488-489 (1955). In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines" *(New Orleans v Dukes,* 427 US 297, 303, *supra).* Plaintiff's arguments as to the desirability of allowing the recovery of punitive damages in these types of actions, however appealing in logic and justice, must be directed to the Legislature. "The courts have deferred to the wisdom of the Legislature in striking the sensitive balance as to the causes of action which should be permitted to be maintained due to the wrongful death of another and also the measure of damages recoverable. (See *Mobil Oil Corp. v Higginbotham,* 436 US 618, 623-636.) In short, legislative enactments have pre-empted this area; the rights accorded by statute being in derogation of the common law; the right to sue for injury sustained due to the death of another must be founded in statutory authority. * * * The courts,

under such circumstances, are not free to consider the relative merits of the arguments in favor of, or in opposition to, this limitation for the Legislature has 'struck the balance for us.' (See *Mobil Oil Corp. v Higginbotham,* 436 US 618, 623, *supra.)" (Liff v Schildkrout,* 49 NY2d 622, 632, 634, *supra.)* Accordingly, the order appealed from is affirmed. Hopkins, J. P., Damiani, Titone and O'Connor, JJ., concur.