OPINION OF THE COURT
Henry J. Scudder, J.
Facts
On September 2, 1992 while working as an employee of Shue Roofing, Inc., Joseph Shue was killed when he fell through a roof on a building owned by the Red Creek Central School District. His wife sued the Red Creek Central School District and Dominick P. Massa and Sons, Inc., alleging violations of sections 200, 240 (1) and section 241 (6) of the Labor Law. Li *745 ability was established on July 2, 1996 on a motion for summary judgment.
A trial on the issue of damages resulted in a verdict for the plaintiff in the amount of $950,000. Each of her three children received a verdict of $200,000 for his pecuniary loss. Also, the decedent’s estate was awarded $50,000 for the pain and suffering of Joseph Shue.
Collateral Source Deductions
On July 21, 1997 a postverdict hearing was held regarding the collateral source offsets and the application of preverdict interest on future damages. At the postverdict hearing the two experts, Professor Kenneth Joyce and Donald J. Judge, Esq., agreed on most of the calculations, but they disagreed as to what may be collateral source assets provided for in CPLR 4545 and preverdict interest on future damages. The defendants have the burden of proof by a preponderance of the evidence on the issue of collateral source reductions.
It is the plaintiff’s position that since the verdict sheet did not require that damages suffered prior to the verdict and after the verdict be separately itemized pursuant to CPLR 4111 (f), it is impossible to arrive at the calculations required by CPLR 5041 and EPTL 5-4.3. On that issue the court had many discussions with all counsel. In fact, the court suggested the jury be asked to return one amount for economic loss and that the Surrogate of the County of Cayuga determine the amount to be distributed between the widow and the children. The plaintiff objected to this and requested that the jury answer the questions as reflected by the verdict sheet. Therefore, I reject the argument that the verdict as taken is now incapable of applying the necessary CPLR 4545 reductions. Also, since the jury determined the number of years over which future damages would be paid, it is reasonable to divide the number of years by the total award for each recipient, and then multiply the number of years from the date of death to the date of verdict, to compute past damages.
The date of death was September 2, 1992 and the date of the verdict was March 13, 1997, resulting in a period of 4 years 192 days or 4.526 years between the date of death and the verdict. Therefore, by multiplying the fraction 4.526 over the number of years found by the jury, the court is able to find the amount of past damages. Interest is due on past economic loss at 9%. Both experts took the halfway point of the past damages so that by multiplying 4.526 X 9% X V2 = 20.367%. *746 That figure multiplied by the past damages amount results in the total damages to the recipients up to the date of the verdict.
The resulting damages are as follows:
Past Future Past with interest
Donna $122,849 $827,151 $147,870
Joseph $ 56,575 $143,425 $ 68,098
Derek $ 47,642 $152,358 $ 57,345
Ryan $ 45,260 $154,740 $ 54,478
$327,791
The next step is to apply CPLR 4545. The question before the court is whether there are any “collateral sources” that should offset the preverdict damages awarded by the jury. The plaintiff does not dispute that the Social Security payments received by Mrs. Shue are collateral source payments pursuant to CPLR 4545. The plaintiff again argues that the jury’s verdict is not consistent with CPLR 4111 (f), therefore no allocation can be made as the defendants cannot prove specifically which item of pecuniary loss the Social Security payments replace. This argument overlooks the fact that Social Security benefits replace lost wages which is the basis for the award to the plaintiff. Therefore, the court finds that Social Security payments are to be deducted from the jury award. The purpose of CPLR 4545 is to insure against a double recovery. The statute states: “(c) Actions for personal injury, injury to property or wrongful death. In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance (except for life insurance), social security (except those benefits provided under title XVII of the social security act), workers’ compensation or employee benefit programs (except such collateral sources entitled by law to liens against any recovery of the plaintiff). If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such *747 benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits. In order to find that any future cost or expense will, with reasonable certainty, be replaced or indemnified by the collateral source, the court must find that the plaintiff is legally entitled to the continued receipt of such collateral source, pursuant to a contract or otherwise enforceable agreement, subject only to the continued payment of a premium and such other financial obligations as may be required by such agreement.”
It is clear that life insurance is not to be deducted from a plaintiff’s award. The defendants allege that since the decedent’s employer paid the premiums, the proceeds result from an employee benefit program which would then qualify the proceeds as a collateral source. The statute does not say exempt life insurance except that which is paid for by an employer, it states that life insurance is exempt. In Adamy v Ziriakus (231 AD2d 80 [4th Dept 1997]), the Appellate Division upheld the trial court that found that death benefits paid pursuant to a collective bargaining agreement between the Town of Amherst and the Amherst Police Club were in the nature of life insurance. The defendants argue that this situation is somehow different because there was no collective bargaining agreement between the decedent and Shue Roofing, Inc.
Clearly how the life insurance was available cannot be a factor in deciding if it was life insurance or an employee benefit. In Adamy (supra) the death benefit was an employee benefit, but that did not prevent it from being life insurance proceeds that are exempted as a collateral source. Also, there is no proof that life insurance proceeds are to replace lost wages. The payment of the proceeds are made based on the death of the contract holder not on lost wages, unlike most disability policies or workers’ compensation awards. Therefore, neither the $133,000 that Mrs. Shue received from Prudential nor the $100,000 that she received from the Guardian policy will be deducted.
The collateral source offsets are as follows:
Past Economic Loss:
Donna Shue $147,870 25.406.50 $122,463.50
Joseph Shue 68,098 25.406.50 $ 42,691.50
*748 Derek Shue 57,345 - 25,406.50 = $ 31,938.50
Ryan Shue 54,478 - 25,406.50 = $ 29,071.50
$226,165.00
Future Economic Loss:
Donna Shue $827,151 - 64,812.50 = $762,338.50
Joseph Shue 143,425 - 57,553.50 = $ 85,871.50
Derek Shue 152,358 - 69,997.50 = $ 82,360.50
Ryan Shue 154,740 - 82,441.50 = $ 72,298.50
Interest on Future Damages
As noted, the experts disagree on the payment of interest on future damages. There are two statutes that address wrongful death actions. EPTL 5-4.3 provides for the whole amount of the future damages, the “principal sum”, to be discounted to the date of death and interest added from that date, in this case September 2, 1992, to the date of the verdict, March 13, 1997. The plaintiff’s expert, Professor Joyce, relies upon this process as it is required by the Court of Appeals in Milbrandt v Green Refractories Co. (79 NY2d 26 [1992]).
Both Professor Joyce and the defendants’ expert, Mr. Judge, acknowledge that there is a conflict between the EPTL and CPLR article 50-B when attempting to determine preverdict interest on future damages in a wrongful death action.
CPLR 5041 requires that the first $250,000 of the award for future damages be part of the judgment together with the past damages. It further provides that the balance of the award (total less $250,000) be discounted in order to determine the amount of the annuity to be purchased for the payment of those damages over the number of years as the jury determined.
The attorney’s fees are calculated as a percentage of the past damages, the future damages up to $250,000 and the present value of the balance of the future damages.
Both experts agreed that the preverdict interest on the past damages would be calculated from a midpoint between the date of death and the date of verdict as discussed above.
As noted, it is the calculation of the interest on the future damages that has been problematic because the EPTL and the CPLR cannot be reconciled in this regard. In Milbrandt (supra), the Court of Appeals applied EPTL 5-4.3. However, that case was litigated prior to the enactment of CPLR 5041 and therefore does not address the conflict.
*749 In drafting article 50-B, it is apparent that the Legislature did not consider that when applied to a wrongful death action, it requires a process that is not contemplated by the EPTL. The EPTL separates past and future damages in order to determine interest. However, unlike the provisions of the CPLR, the EPTL does not require that the first $250,000 of the future damages be paid at the time of the judgment and the balance paid as an annuity. Further, the EPTL does not specify how the attorney’s fees are to be determined.
CPLR article 50-B cannot be reconciled with EPTL 5-4.3 and Milbrandt (supra). As the statute was enacted after the Milbrandt case was litigated, this court must apply the applicable sections of the CPLR.
The Court of Appeals has addressed the issue of discounting an award for damages in a bifurcated trial in Pay v State of New York (87 NY2d 1011 [1996]). In that case the Court, quoting its decision in Rohring v Niagara Falls (84 NY2d 60 [1994]), held that “ ‘the future damages here were properly treated as a debt owed entirely as of the date of the liability verdict, and interest was properly charged against the present value of future damages from that date’ ”. (Pay v State of New York, at 1013-1014.)
The balance of the future damages will be discounted to the date of the determination of liability, July 2, 1996, as required by Pay v State of New York (87 NY2d 1011, supra). Attorney’s fees must be calculated on the present value necessary to purchase the annuity contract to provide for the plaintiff’s future damages. Therefore:
Attorney’s fees Balance of future damages Years Present Value Present Value Balance
Donna Shue $572,299.10 30.474 $362,716.03 $120,905.33 $241,810.70
Joseph Shue $ 64,485.04 11.474 $ 51,749.16 $ 17,249.73 $ 34,499.43
Derek Shue $ 61,829.28 14.474 $ 47,744.12 $ 15,914.70 $ 31,829.42
Ryan Shue $ 54,275.58 15.474 $ 41,377.73 $ 13,792.58 $ 27,585.15
TOTALS $752,889.00 $503,587.04 $167,862.34 $335,724.75
*750 Balance after deduction For Share of $250,000 Years Gross/Initial First Annual Payment
Donna $572,229.10 30.474 $18,779.91
Joseph $ 64,485.04 11.474 $ 5,618.35
Derek $ 61,829.28 14.474 $ 4,271.75
Ryan $ 54,275.58 15.474 $ 3,507.53
Using a weighted discount rate of 6.90% adjusted to calculate interest from the date of the determination of liability to the date of the verdict, see the following:
Present Value Annuities First Year Balance of Present Value Fraction
$12,519.94 Donna $241,810.70 (Divided by) 19.314041
$ 3,745.57 Joseph $ 34,499.48 9.210731
$ 2,847.83 Derek $ 31,829.41 11.176717
$ 2,338.36 Ryan $ 27,585.16 11.796815
RECAPITULATION
Per diem interest Plaintiff Attorney’s fee Total
$68.10 (from date of verdict; interest from midpoint to verdict is included in the total of $276,155) Past Damages $184,100.01 $92,054.99 $276,155 (including pain and suffering)
$61.64 (from midpoint) Future Damages (first $250,000) $166,666.68 $83,333.33 $250,000
Per diem interest Plaintiff Attorney’s fee Total
$41.39 (attorney’s fee/ unknown interest on amount to purchase annuity calculated from July 2, 1996, the date of the determination of liability) Annuity (discounted) $335,724.72 $167,862.34 $503,587.06
Plaintiff Attorney’s fee Total Per diem interest
Totals
Lump-sum payments
Past damages $184,100.01 $ 92,054.99 $276,155 $68.10 (from verdict)
*751 First $250,000 of $61.64 future damages $166,666.68 $ 83,333.33 $250,000 (from midpoint)
Attorney’s fee on balance of future damages after first $250,000 $41.39 (from date of liability, $167,862.34 July 2, 1996)
Present value of $335,724.72 future damages after deduction of first $250,000 and attorney’s fees interest to be computed on the amount needed to purchase annuities pursuant to CPLR 5041 (e) is unknown at this time (computed from date of liability, July 2, 1996)